FILED

2004 Nov-29  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHRISTINA PALMORE,

      Plaintiff,

vs.                                 CASE NO. CV-04-J-187-S

BIG B, INC.,

      Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 15), a brief in support of said motion (doc. 16) and evidence (doc. 17). Plaintiff filed a response (doc. 18) and evidence (doc. 19) and the defendant submitted a reply (doc. 20). The court also has before it the defendant's request for oral argument on the motion for summary judgment. The court finding that oral argument would not be of substantial assistance, the defendant's request is **DENIED**.

### I. Factual Background

Plaintiff alleges that the defendant discriminated against her on the basis of race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title VII") and 42 U.S.C. § 1981.

The plaintiff began working for defendant on November 1, 2001 and was thereafter promoted to photo lab supervisor. On December 31, 2003, Frank Losada

became the store manager.  Plaintiff depo. at 56; Losada depo. at 10.  Plaintiff claims Losada engaged in a pattern and practice of reducing black employees' hours and that her own hours were cut from 40-48 per week to 28-35 per week.  Plaintiff depo. at 50, 56, 60, 73.  She also complains that after Losada became the store manager, her register was routinely short when she began work.  *Id.* at 89.

The plaintiff alleges that while black employees' hours were reduced, Losada gave more hours to white employees and also hired a white man. Plaintiff depo. at 69-70, 78-81.  Losada told her everyone's hours were cut back, but the plaintiff states this did not happen.  *Id.*, at 56; Losada depo. at 32-34, 42.  Plaintiff told Losada that she knew he was cutting black employees' hours and hiring white employees at the same time.  Plaintiff depo. at 120-122.  Losada states that the only thing the plaintiff questioned was why her hours were cut when Cassie (a white female) got more hours, and he told her it was because he was having to use Cassie as an assistant manager. Losada depo. at 42-43.  He did hire two white woman and a black woman because another employee (Faye Cain, white female), quit.  *Id.* at 37-39, 73-74.

The plaintiff reported to the district manager, Michael Berry, that black cashiers were being fired and that black female employees were getting their hours cut. Plaintiff depo. at 89-90, 103-104; Berry depo at 8.  Berry told the plaintiff that the total number of hours allowed for the store had been reduced.  Plaintiff depo. at 92;

2

Berry depo. at 8, 13, 17.  The plaintiff also reported that Losada was ringing up fictitious refunds and pocketing the money.  Plaintiff depo. at 93-94, 96; Berry depo. at 16-19.  The second time she spoke with Berry, she told him the situation at the store had worsened, that Losada would refuse to verify the amount in her register, and that Losada was trying to get rid of her.  Plaintiff depo. at 100-101.  However, each time she reported a discrepancy in her register, it was fixed and she was not disciplined for this.  *Id.*, at 113, 119.

Shortly after complaining to Berry, the plaintiff was fired.  Complaint, ¶ 14; Losada depo. at 13.  The plaintiff states Losada told her not to come in until 10:00 a.m. on March 21, 2003, to help put away merchandise from the truck.  Plaintiff depo. at 196.  Losada disputes telling her to come in at 10:00 a.m.  Losada depo. at 29.  She was then written up for being an hour and 20 minutes late because she was on the schedule for 9 a.m.  Plaintiff depo. at 196-202, 208-209; def. exh. 19 to plaintiff depo.  The plaintiff alleges she never saw this write up, although it is marked "refused to sign."  Plaintiff depo. at 204.  On March 25, 2003, the plaintiff was again written up for being late, and then terminated.  Def. exh. 21; Losada depo. at 24-25.  Plaintiff claims Losada told her to come to the office, then stated "he got my ass" and "[t]o get the hell out of his office."  Plaintiff depo. at 146.  Losada also alleges the plaintiff had not shown up for work the previous Monday, but the plaintiff explained she had

3

swapped days with another employee and a supervisor had approved it.  *Id.*, at 209-212.

The plaintiff alleges she was given no reason for her termination.  Plaintiff depo. at 147.  Losada states he told her that she was late again, it was affecting the operation of the store, and that she was not needed anymore.  Losada depo. at 26-27, 31.  The plaintiff states Losada fired her because she is black.  Plaintiff depo. at 215.  She was replaced as photo lab manager by a black female.  Losada depo. at 39, 73.  Losada testified that he made the decision to terminate the plaintiff based on her being late and not following the schedule.  *Id.*, at 14-15.  He did not know she had previously complained to Berry.[1]  *Id.*, at 44, 57.

Losada asserts he had told the plaintiff that if she was late one more time, she would be fired.  Losada depo. at 71; exh's 1-5 to Losada depo.  The plaintiff states Losada never said anything to her about being late.  Plaintiff depo. at 188.  She states she never saw and never refused to sign disciplinary forms, marked "refused to sign," about being late to work.  *Id.*, at 187-191; def. exhs. 15, 16 to plaintiff depo.  Losada states he showed them to her.  Losada depo. at 18-22.  According to Berry, employees

---

[1]The plaintiff alleged in her complaint and deposition that she was fired in retaliation for going to Berry.  Plaintiff depo. at 220.  She stated she knew Losada knew she went to Berry because Losada told a shift supervisor the plaintiff has called corporate.  *Id.*, at 222-223. However, in her response to the motion for summary judgment, the plaintiff does not make this argument.  Rather, she now maintains that she was terminated in retaliation for complaining to Losada.

did not have to sign, or even be shown, verbal warnings, but should have seen and signed written warnings. Berry depo. at 24-25. There is no set number of verbal warnings before written warnings issue. *Id.*, at 25.

The plaintiff called Sherri Freeman, the human resource manager, about her termination. Plaintiff depo. at 149; Freeman depo. at 7. The plaintiff faxed Ms. Freeman a letter, but never heard back from her. Plaintiff depo. at 150-152; def. exh. 22. In this letter, she states she was told to work 10-7 the previous Friday to accommodate her school schedule. Def. exh. 22. Freeman states that the first she heard of the plaintiff was her EEOC charge. Freeman depo. at 13.

Under previous managers, the plaintiff was written up repeatedly for being late. Plaintiff depo. at 164-167; def. exhs. 5, 6, 7, 9. Under manager Jimmy Cockrell she was late 28 out of 42 shifts, which is 67% of the time. Def. exh. 12. The plaintiff disputes this. Plaintiff depo. at 181-182. She also accused Cockrell of making racist statements. *Id.*, at 178; def. exh. 12. The plaintiff testified that, when she told the EEOC she had no prior warnings for being late, she meant no prior warnings from Losada. Plaintiff depo. at 228-229. She admits she was late at times. *Id.*, at 229.

The plaintiff claims that Melissa Peoples, a white female employee who worked in the pharmacy, was not disciplined for repeated tardiness. Plaintiff depo. at 216-218. According to Freeman, there was not a tardiness issue with Peoples. Freeman

depo. at 22.  Additionally Peoples, as a pharmacy technician, would answer to the

pharmacist in charge ("PIC"), and not the store manager.  *Id.*, at 50-52.  The PIC runs

the pharmacy, and reports to the same district manager as the store manager, while the

store manager runs the front end of the store.  *Id.,* at 23, 51-52.  The PIC, Jeri Beth

Good, states that she did not have problems with Peoples being late.  Good affidavit,

¶¶ 1-2.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party will
> bear the burden of proof at trial.  In such a situation, there can be no
> genuine issue as to any material fact, since the complete failure of proof
> concerning an essential element of the non-moving party's case
> necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23.  The party moving for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e). In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers each of the plaintiff's claims.

### III.  LEGAL ANALYSIS

As there is no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004).  *See also  McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).

Plaintiff asserts that the above facts constitute race discrimination and retaliation under 42 U.S.C. § 2000e and 42 U.S.C. § 1981.  Whether this case is pursuant to 42 U.S.C. § 2000e or § 1981, the same substantive proof is required and it is analyzed under the same framework.  *See e.g., Bass v. Board of County Com'rs, Orange County, Florida*, 256 F.3d 1095, 1109 n. 4 (11th Cir.2001); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998).

First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824.  Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee.  *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).  Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment

action. *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir.2002); *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996). Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

For a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside the class more favorably; and (4) she was qualified to do her job. *See Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11th Cir.2000); *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir.2000). The plaintiff must show similarly situated employees who were not black were accused of similar misconduct and not terminated.[2] *Jones v. Bessemer*

---

[2]In *Jones v. Gerwens,* the Eleventh Circuit stated, "we hold that, in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) [s]he did not violate the work rule or (b) [s]he engaged in misconduct similar to a person outside the protected class and that the disciplinary measures imposed were more severe.... The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any *prima facia* case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones,* 874

*Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir.) *as modified by* 151 F.3d 1321 (11th Cir.1998).

Plaintiff is a member of a protected class and she was terminated, which is an adverse employment action.  She alleges that Melissa Peoples, who is outside her protected class, was treated more favorably, as she was often late and not terminated. The defendant does not dispute that the plaintiff was qualified for her job.  However, the defendant does dispute that Peoples is a valid comparator because she was a pharmacy employee, and therefore not supervised by Lasardo.

Plaintiff's argument rests on Peoples being a proper comparator.  She states that "[b]y treating Melissa Peoples more favorably, and not even counseling her when her attendance record was obviously terrible, while terminating Plaintiff, is evidence that Plaintiff's race was a motivating factor in her termination."  Plaintiff's opposition. However, there is no evidence before the court that Melissa Peoples had a "terrible" attendance record.  The plaintiff submits the time cards of Peoples for January and February, 2003.  Plaintiff exhibit 3.  Because the plaintiff offers no evidence of what

---

F.2d at 1540; citing *Chaney v Southern Railway Co.*, 847 F.2d 718, 723-724 (11th Cir. 1988).  Furthermore, the plaintiff must also show that the supervisor or foreman was aware of violations of rules by other employees and that the known violations were consciously overlooked.  *Jones*, 874 F.2d at 1542.

time Peoples was supposed to arrive at work, these time cards are of questionable value, even if Peoples was an appropriate comparator.

Having considered the evidence submitted by the parties, the court finds that Peoples is not a valid comparator.  The plaintiff does not dispute that Peoples' manager was the PIC, although she does argue that Peoples' time cards were reviewed by Losada.  The plaintiff offers no evidence that Losada could have terminated Peoples for being tardy.  Her time cards establish that all her hours were worked in the pharmacy. Plaintiff Exhibit 3. Pharmacy employees were supervised by the PIC.  The PIC, Jeri Beth Good, did not have problems with Peoples being late.  Good affidavit, ¶¶ 1-2.  Additionally, there is no evidence that Peoples would rearrange her own schedule as the plaintiff did.

Defendant offered legitimate, non-discriminatory reasons for the plaintiff's termination.  The plaintiff admits she was repeatedly late to work and changed her schedule to fit her own needs.  This is a legitimate reason for the defendant to terminate plaintiff, even if it did not warn her as the defendant claims. This court may not second-guess employers' business decisions.  *Nix v. WLCY Radio/Rahall Comminications*, 738 F.2d 1181, 1187 (11th Cir. 1984).  The reason offered by an employer for an action "'does not have to be a reason that the judge or jurors would act on or approve' ... Instead, all that matters is that the employer advance an

explanation for its action that is not discriminatory in nature." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).

Because the defendant offered a legitimate, non-discriminatory reason for its actions, the plaintiff must demonstrate by a preponderance of the evidence that this reason was pretextual, which the plaintiff has failed to do.   The plaintiff states she just believes her termination was racially motivated.   Even though the plaintiff states she was not previously warned, unfair treatment without discrimination is not an unlawful employment practice under Title VII.   *See e.g., Coutu v. Martin County Brd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir.1995).   *See also Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997) ("federal courts do not sit to second-guess the business judgment of employers").   Title VII was not intended to make this court a "super-personnel department" to reexamine employer's business decisions.   *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1244 (11th Cir.2001).   "Federal courts do not sit to review the accuracy of the employer's fact finding or of the employer's decision to terminate a plaintiff's employment."   *Bessemer Carraway*, 151 F.3d at 1324; citing *Nix,* 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment in the workplace.... The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason").

Although plaintiff alleged in her complaint and testified in her deposition she was fired in retaliation for going to Berry, in her opposition to summary judgment, she asserts she was terminated for complaining to Losada about reducing black employees' hours, and not for her complaints to Berry.

To establish retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard.  The plaintiff must prove (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), citing *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir.1999).  *See also  Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999),  *Holifield v. Reno,* 115 F.3d 1555, 1566 (11th Cir.1997).

Protected activity under Title VII includes complaining to superiors.  *Johnson,* 234 F.3d at 507, citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures").  Thus, the court assumes that the plaintiff's complaint to Losada was protected activity.

Because there is no dispute that she was terminated, the court considers whether there was a causal connection between the plaintiff's termination and her complaint. The plaintiff 'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed.' *Gupta,* 212 F.3d at 586, citing *Meeks v. Computer Assocs. Int'l.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989)).

Here, the sole evidence of the plaintiff's complaint to Losada is her testimony that she told Losada that she knew he was cutting black employees' hours and hiring white employees at the same time. Losada states this never happened. No evidence of when this alleged conversation took place is offered by the plaintiff. Because the court must view the evidence in the light most favorable to the plaintiff, the court assumes, without deciding, that the plaintiff's testimony is sufficient to establish a prima facie case of retaliation.

Thus, the court returns to the analysis it engaged in above, namely that the defendant has offered evidence of a non-discriminatoy reason for the plaintiff's termination, namely that plaintiff was terminated for excessive tardiness. The court finds that the defendant's proffered reason for terminating the plaintiff is a legitimate reason for its employment action. The plaintiff therefore has to show that the

employer's proffered reason for taking the adverse action was actually a pretext for prohibited retaliatory conduct.  *See Johnson v. Booker T. Washington Broadcasting Service, Inc.* 234 F.3d 501, 507 (11th Cir.2000), citing *Sullivan v. National Railroad Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999) (quoting *Raney v. Vinson Guard Service,* 120 F.3d 1192, 1196 (11th Cir.1997).  As discussed above, the plaintiff does not dispute that she was quite often late to work.  She states only that this was not the real reason she was terminated and that the real reason was because of her race.  This simply is not sufficient to demonstrate that there is a genuine issue for trial.  Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997).  The plaintiff must do more than merely allege pretext to make out a triable issue of fact. *Earley v. Champion Intern. Corp*., 907 F.2d 1077, 1084 n. 5 (11th Cir.1990).  Yet here, plaintiff offers no more than her own statement that she believes the real reason she was fired was because of her race.  She offers no evidence to support this belief, although she bears the burden of establishing sufficient evidence to create a genuine issue of material fact regarding whether defendant's stated reason is pretextual. *Chapman,* 229 F.3d at 1024-25.

15

## CONCLUSION

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 29th day of November, 2004.

INGE P. JOHNSON
U.S. DISTRICT JUDGE